UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 10-20196-CIV-LENARD/SIMONTON

SAMCO GLOBAL ARMS, INC.,
a Florida Corporation,

    Plaintiff,

vs.

THE REPUBLIC OF HONDURAS,
a foreign sovereign nation, the
PROCURADURIA GENERAL DE
LA REPUBLICA, an agency or instrumentality
of the REPUBLIC OF HONDURAS and
ROSA AMERICA MIRANDA DE GALO,
in her official capacity as PROCURADOR
GENERAL OF THE REPUBLIC OF
HONDURAS, a foreign sovereign State.

    Defendants.
_____/

## SAMCO GLOBAL ARMS, INC.'S AMENDED COMPLAINT

The Plaintiff, Samco Global Arms, Inc., a Florida Corporation, sues Defendant, The Republic of Honduras, a foreign sovereign State, Defendant, Procuraduria General de la Republica, the office of the attorney general of the Republic of Honduras, and Defendant, Rosa America Miranda de Galo, in her official Capacity as Procurador General of the Republic of Honduras, and alleges:

### JURISDICTION, PARTIES AND VENUE

1.) This is an action for damages which exceed $15,000.00 exclusive of interest, attorneys' fees and costs.

2.)     Plaintiff, Samco Global Arms, Inc. ("SAMCO") is a Florida corporation with its principal place of business in Miami, Florida and is authorized to and does conduct business in Florida.

3.)     Defendant, the Republic of Honduras ("Honduras") is a foreign state who directly and actively engaged in and was a party to continuous, non-isolated commercial dealings in the State of Florida and the United States. This Court has jurisdiction over Honduras under §48.193(1)(a) and (2), *Fla. Stat*. because Honduras (1) failed to make payment for weapons, munitions and explosives (the "inventory") to SAMCO for inventory missing, damaged, destroyed and rendered worthless as a result of Defendants' negligence, theft and failure to properly maintain, and (2) Honduras directly interfered with and controlled SAMCO's ability to otherwise engage in and fulfill contracts entered into in the State of Florida regarding the same inventory.

4.)     Defendant, Procuraduria General de la Republica, as stated in the Political Constitution of the Republic of Honduras, is the legal representative of the Honduran Government, (Art. 228 Constitucion Politico), and as such is an agency or instrumentality of the Honduran Government. It is charged with transacting commercially in the State of Florida and not fulfilling its contract with SAMCO. Therefore, this Court has jurisdiction over Procuraduria General de la Republica under §48.193(1)(a) and (2), *Fla. Stat*.

5.)     Defendant, Rosa America Miranda de Galo, is sued in her official capacity as Procurador General of the Republic of Honduras. This Court has jurisdiction over Rosa America Miranda de Galo under §48.193(1)(a) and (2), *Fla. Stat*. as an agent of Procuraduria General de la Republica, an agency, legal representative or instrumentality of the Honduran Government, who transacted commercially in the State of Florida.

6.) There does not exist an adequate alternative forum for the resolution of this claim in Honduras as follows:

a.) all administrative and juridical processes have been exhausted in Honduras;

b.) SAMCO – as the rightful and lawful owner of the subject commercial goods – has not received the transfer and possession of all of the goods at issue in Honduras, which are free and clear of any liens or possessory interests and are not the subject of any pending Honduran litigation;

c.) No other action has been taken on the part of the Honduran Government's highest officials to enforce the Judgment of the Honduran courts; and

d.) As a result, SAMCO has been unable to engage in and fulfill contracts entered into in the State of Florida regarding the subject inventory.

7.) The acts complained of herein constitute a breach of contract, causing as a result of the breach, a denial of justice under both United States and Honduran law, taking into consideration that the Republic of Honduras is obligated as a depository to receive, keep, and restitute the subject goods to the depositor when it is claimed, otherwise, to be responsible for all damages incurred while in their keep. (Art. 1947-48 Honduran Civil Code).

## JURISDICTION IS BASED ON COMMERCIAL ACTIVITY

8.) Pursuant to 28 U.S.C. § 1330 entitled Actions against foreign states, this court has original jurisdiction with respect to Honduras unless there is immunity under

the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. § 1602 *et seq*. The FSIA, however, provides exceptions to jurisdictional immunity. Specifically, section § 1605 of the FSIA, entitled, General exceptions to the jurisdictional immunity of a foreign state, says in pertinent part:

> **(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> **(2)** in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; [2] or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; [3] or upon an act outside the territory of the United States with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

9.) "Commercial Activity" is defined in **28 U.S.C. § 1605(a)(2)** as:

> [E]ither a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

10.) In 2002, SAMCO filed a lawsuit for breach of contract against Honduras based on the bailment contract at issue here. That complaint, which contained facts alleging wrongdoing on the part of Honduras regarding a period of time distinct from that alleged here, was dismissed in 2003 based on the FSIA. On appeal, the Eleventh Circuit recognized that the contract at issue constitutes commercial activity on the part of Honduras under the FSIA. However, the Eleventh Circuit affirmed the trial court decision on the narrow grounds that "under the allegations of the complaint" there was no exception pled to the immunity provided by FSIA as there were insufficient allegations of

4

commercial activity on the part of Honduras to subject it to jurisdiction. *Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212 (11th Cir. 2005).

11.) Since then, Honduras has conducted commercial activity that has reached into the United States and that has had a direct impact in the United States by its direct commercial activities in the United States and commercial activities outside the United States that have caused a direct effect in the United States arising from or related to the bailment contract at issue.

12.) Specifically, in 2008 and 2009, Honduras shipped armaments, to wit, bullets, which were part of the goods held by Honduras under the bailment contract, to SAMCO from Porto Cortes, Honduras to the Port of Miami, Florida, United States, for delivery to SAMCO at its place of business in Miami for sale in the United States. These shipments were accomplished via the following commercial activity on Honduras's part:

a. Honduras acted under its bailment contract with SAMCO to obtain from the United States authorities international import certificates identifying the Armed Forces of Honduras as the exporter and SAMCO as the U.S. importer of several million bullets on several occasions between 2008 and 2009. Pursuant to the bailment contract, Honduras was named in the import certificates as the exporter of the ammunition for delivery to SAMCO in Miami, Florida, USA.

b. Honduras acted with SAMCO to obtain from the U.S. Department of Justice a license for SAMCO to import ammunition held by Honduras under the bailment contract in 2008. The license identified the Armed Forces of Honduras as the foreign shipper of the ammunition for delivery to SAMCO in Miami, Florida, USA.

    c.    On several occasions in 2008 and 2009, Honduras shipped ammunition from Port Cortes, Honduras to SAMCO's place of business for sale in Florida and other parts of the United States.

    13.)    This commercial activity on the part of Honduras directed towards the United States had the immediate effect of permitting SAMCO to consummate commercial sales of the ammunition to third parties in the USA under the bailment contract. Honduras exported the goods to SAMCO in the USA from the stock it held under the bailment contract.

    14.)    This commercial activity on Honduras's part in exporting the bailed goods to Samco in the United States was the impetus and a direct reason why the following sales were able to be completed by SAMCO in the USA:

    a.    In March 2009, under a deal with Midwest Gun Exchange, Inc., located in Indiana, SAMCO delivered bullets from Miami that Honduras exported and delivered to SAMCO under the bailment contract.  The sums which SAMCO was paid by Midwest were received in Miami in the form of a wire transfer from Midwest's United States bank into SAMCO's account with Wachovia Bank in Miami.

    b.    In March 2009 under a deal with LHD, located in Maine, SAMCO sold LHD bullets that Honduras exported and delivered to SAMCO under the bailment contract.  The sums which SAMCO was paid by LHD were paid by a check drawn on a United States bank which SAMCO deposited in its bank account with Wachovia Bank in Miami.

    c.    In April 2009, under a second deal with LHD, SAMCO sold LHD bullets that had been delivered to SAMCO by Honduras under the bailment contract.  The sums

which SAMCO was paid by LHD were again paid by check which SAMCO deposited in its Wachovia Bank, Miami account.

15.) On other occasions, Honduras, in carrying out commercial activity both in Honduras and in the United States, acted or failed to act under the bailment contract in ways that breached its obligation to act in good faith under its contract to preserve the arms it held and to export them to SAMCO in Miami in order for SAMCO to complete sales in the United States. Honduras has failed to release the arms it retains under the bailment contract and has thus denied SAMCO its contractual right to the arms held under the contract in order that they may be exported and sold in the United States. For example:

a. In or around July 2008, HCG Export, located in Pennsylvania, contacted SAMCO to purchase for delivery in Pennsylvania, several million rounds of ammunition and thousands of rifles from the SAMCO inventory Honduras holds under the bailment contract. SAMCO was ready, willing and able to sell the armaments. However, Honduras refused to release any of the armaments or ship them to SAMCO in Miami as it had done in the past and as was required to complete the sale. Honduras's breach of contract had a direct and immediate consequence in the United States as the sale could not be completed.

b. Similarly, in early 2009, SAMCO had the opportunity to sell more ammunition and weapons held by Honduras in bailment to Century International Arms, based in Delray Beach, Florida, for delivery in Florida. However, as the direct result of Honduras's breach of contract in failing to export and deliver the goods to SAMCO in Miami, as it had done in the past, the sale was lost.

16.) Many other sales could have been consummated by SAMCO in the United States but for Honduras's contractual breach.

## BACKGROUND FACTS CONCERNING
## THE CONTRACT AT ISSUE

17.) The contract at issue came about when, on or about July 19, 1985, Longlac Enterprises Corporation ("Longlac"), a Panamanian Corporation and a nonparty to this action, executed a contract with the Armed Forces of Honduras and with the approval of the Commander in Chief of the Armed Forces (the President of Honduras), the "1985 Contract", a copy of which is attached hereto as Exhibit "A".

18.) Under the 1985 Contract, the inventory was imported into Honduras by Longlac and placed in the sole custody, control and care of the Armed Forces of Honduras. The 1985 contract additionally provided that the Armed Forces of Honduras were solely responsible for the inventory and maintenance of the warehouse that Longlac constructed in Honduras, including storage of the inventory and the contents thereof.

19.) The 1985 Contract stated that Honduras would indemnify Longlac for any loss or damages to the materials in the Honduran custody. The 1985 Contract also provides that the Honduran Armed Forces could choose within thirty (30) days, at their option, to purchase any of the arms brought into the country pursuant to the 1985 contract.

20.) Last, the 1985 Contract states that Longlac could export and sell the materials not purchased by Honduras.

21.) Pursuant to the 1985 contract, originally, Longlac deposited the inventory, and the Honduran Government did not perform its obligations under the contract. The Honduran Government, by and through the Honduran courts, prevented the Honduran

Armed Forces from returning the inventory. Much of the inventory has since gone missing, been destroyed or damaged, and rendered worthless.

22.) After delivery of the inventory by Longlac, a Honduran criminal court action was brought against members of the Honduran Armed Forces on charges of possible illegal trafficking of arms owned by Longlac that ultimately found no criminal misconduct and returned control of the arms to the rightful owner, Longlac.

23.) Despite this result, the Honduran courts admitted an illegal embargo or lien (further discussed below) and allowed the storage facility to lapse into a state of disrepair, and most of the materials went missing, were destroyed or damaged, and rendered worthless.

24.) On May 15, 2000, Longlac validly sold all rights and claims it had under the 1985 Contract to SAMCO, a copy of which is attached hereto as Exhibit "B".

25.) Thereafter, the Fourth Criminal Court of Honduras, San Pedro Sula, Cortes ordered the Ministry of Defense of Honduras to turn over the remaining inventory of Armaments to SAMCO, a copy of said order is attached hereto as Exhibit "C". The Honduran prosecutors appealed that order to the Appellate Court in Honduras, who also ordered return of the remaining materials to SAMCO, a copy of said orders are attached hereto as Exhibits "D", "E" and "F".

26.) During this time period, in June 2000, part of the remaining inventory was illegally embargoed against SAMCO. However, on April 22, 2003, this illegal embargo previously approved by the Honduran Courts was lifted *by oficio*, Order of the Supreme Court. A copy of said order is attached hereto as Exhibit "G".

27.) In 2008 and 2009, after the lien was lifted, Honduras released some bullets from SAMCO's inventory which Honduras holds under its contract in order for SAMCO to complete sales of the bullets in the United States. In order to accomplish this:

a. Honduras acted with SAMCO under the bailment contract to obtain from the United States authorities international import certificates identifying the Armed Forces of Honduras as the exporter and SAMCO as the U.S. importer of several million bullets on several occasions between 2008 and 2009. Pursuant to the bailment contract, Honduras was named as the exporter of the ammunition for delivery to SAMCO in Miami, Florida, USA.

b. Honduras acted with SAMCO to obtain from the U.S. Department of Justice a license for SAMCO to import ammunition held by Honduras under the bailment contract in 2008. The license identified the Armed Forces of Honduras as the foreign shipper of the ammunition for delivery to SAMCO in Miami, Florida, USA.

c. On several occasions in 2008 and 2009, Honduras shipped ammunition from Port Cortez, Honduras to SAMCO's place of business for sale in Miami, Florida.

28.) This commercial activity on the part of Honduras had the direct effect of permitting SAMCO to consummate commercial sales of the ammunition to third parties in the USA under the bailment contract. Honduras exported the goods to SAMCO in the USA from the stock Honduras held under the bailment contract.

29.) Honduras's exportation of a small portion of the bailed goods was the impetus and a direct reason why the following sales were made by SAMCO in the USA:

a. In March 2009, under a deal with Midwest Gun Exchange, Inc., located in Indiana, SAMCO delivered bullets from Miami that had been delivered to SAMCO by

Honduras under the bailment contract. The sums which SAMCO was paid by Midwest were received in Miami in the form of a wire transfer from Midwest's American bank into SAMCO's bank account with Wachovia Bank, Miami.

    b.    In March 2009 under a deal with LHD, located in Maine, SAMCO sold LHD bullets that had been delivered to SAMCO by Honduras under the bailment contract. The sums which SAMCO was paid by LHD were paid by check drawn on an American bank account which SAMCO deposited in its bank account with Wachovia Bank, Miami.

    c.    In April 2009, under a second deal with LHD, SAMCO sold LHD bullets that had been delivered to SAMCO by Honduras under the bailment contract. The sums which SAMCO was paid by LHD were again paid by check which SAMCO deposited in its Wachovia Bank, Miami account.

    30.)    However, many other sales of SAMCO's inventory were lost to SAMCO as a direct result of Honduras's breach of its contract and failure to preserve the armaments in its custody and to release and export the armaments to the United States as it contracted to do and as it had done on other occasions. For example:

    a.    In or around July 2008, HCG Export, located in Pennsylvania, contacted SAMCO to purchase for delivery to HCG in Pennsylvania, several million rounds of ammunition and thousands of rifles from the SAMCO inventory Honduras holds under the bailment contract. SAMCO was ready, willing and able to sell the armaments and notified Honduras to release the armaments and deliver them to Miami, as Honduras had done on prior occasions pursuant to the contract at issue. However, Honduras refused to release the arms and ship them to SAMCO in Miami as it had done in the past and as was

11

required to consummate the sale. Honduras's breach of contract had the direct and immediate consequence of prohibiting the sale's completion.

    b.    Similarly, in early 2009, SAMCO had the opportunity to sell more ammunition and as well as weapons held by Honduras in bailment to Century International Arms, based in Delray Beach, Florida, for delivery in Florida. However, as the direct result of Honduras's breach of contract in failing to deliver the goods to SAMCO in Miami, as it had done in the past, the sale was lost.

    31.)    On March 9, 2009, the remaining inventory was once more illegally embargoed. However, on September 4, 2009, this illegal embargo was lifted by the Honduran Court at SAMCO's request. A copy of said order is attached hereto as Exhibit "H". With no existing lien, property or possessory interest claim in Honduras against the subject inventory of Armaments, the Honduran courts again ordered the remaining materials be returned to SAMCO, the legal and rightful owner. *Id.*

    33.)    However, to date, the Republic of Honduras, itself and through its agent, legal representative or instrumentality, Procuraduria General de la Republica and Rosa America Miranda de Galo, has not returned all of the inventory to SAMCO, as ordered by the First Civil Court, First Instance, the Fourth Criminal Court of Honduras, and the Appellate Court, even with the goodwill of the Armed Forces.

    33.)    The acts described above, among others, constitute an unlawful breach of the 1985 contract under both Honduran and United States law, and a total denial of justice.

    34.)    Defendants also committed a breach of the 1985 Contract by allowing the warehouse to lapse into a state of disrepair, rendering much of the inventory in their sole

custody, control and care in the warehouse damaged and unusable, without payment or restitution even though Honduras knew that under its contract, the arms belonged to SAMCO, it had the duty to preserve the arms and that the defendant held them subject to their export and sale in the United States. Because of this wrongful commercial activity by Honduras to fail to preserve the inventory it was entrusted with under its contract, SAMCO has lost the ability to sell those damaged and destroyed armaments in the USA as contemplated by SAMCO and by Honduras as demonstrated by Honduras's delivery of some undamaged goods to SAMCO for sale in the USA.

35.) As a result, Defendants have engaged in and been a party to commercial activity by directly controlling SAMCO's ability to engage in and transact commercially in the United States and by preventing SAMCO from fulfilling contracts entered into in the State of Florida. Despite any Order of the Honduran courts, Defendants have not returned the remaining inventory of armaments to SAMCO following the valid sale of all rights by Longlac to SAMCO in the same, allowing by each day the equipment to become obsolete.

36.) SAMCO is therefore entitled to indemnification for any and all damages and losses to the inventory resulting from the breach of the 1985 contract.

37.) SAMCO has demanded indemnification from Honduras for the losses caused by Honduras' breach of the 1985 contract prior to the filing of this Complaint and the Procuraduria General de la Republica has refused to satisfy SAMCO's demand for payment.

38.) To date, the Republic of Honduras has not complied with the confirmed judgment issued, both nationally and internationally and not allowed the delivery of SAMCO goods to SAMCO in Miami.

39.) Since all administrative processes have been exhausted in Honduras, SAMCO also requests a declaratory decree that enforces the confirmed judgment of the Honduran courts.

40.) All conditions precedent to the filing of this Complaint have been performed, waived or excused.

**COUNT I**
**BREACH OF CONTRACT**

41.) SAMCO incorporates by reference paragraphs 1 through 40 as though set forth at length herein.

42.) SAMCO has fulfilled all its obligations and responsibilities pursuant to the terms of the 1985 Agreement.

43.) Despite repeated demand, and despite an order issued by the Honduran courts, Defendants have and do refuse to perform their obligations and responsibilities pursuant to the terms of the 1985 Agreement and the laws of Honduras.

44.) SAMCO has and is continuing to suffer losses due to Defendants' failure to meet their contractual obligations and make payment for inventory missing, damaged or destroyed, and rendered worthless as a result of Defendants negligence, theft and failure to properly maintain. SAMCO has not received payment or compensation for the losses incurred, and SAMCO has yet to be returned remaining inventoried materials in Defendants' possession.

45.) Honduras breached its obligation to act in good faith under its contract, to safeguard the arms it held and export them to SAMCO in Miami in order for sales to be completed.

46.) Honduras has acted in the past with SAMCO under the bailment contract to obtain the necessary licenses and permits from the United States needed to export the goods to the United States and in 2008 and 2009, it shipped some portion of the bailed armaments, bullets, to SAMCO in Miami in order that sales could be completed. This course of conduct shows that Honduras understands the contract to include its export and shipment of the bailed goods to SAMCO in the United States.

47.) However, other than the preservation, release and shipment of a limited amount of ammunition, Honduras has completely failed to preserve, release and export the arms it retains under the bailment contract and has thus denied SAMCO its contractual rights.

48.) Samples of sales lost due to Honduras's contractual breach include:

a. In or around July 2008, HCG Export, located in Pennsylvania, contacted SAMCO to purchase for delivery to HCG in Pennsylvania, several million rounds of ammunition and thousands of rifles from the SAMCO inventory Honduras holds under the bailment contract. SAMCO was ready, willing and able to sell the armaments and notified Honduras to release the armaments and deliver them to Miami, as Honduras had done on prior occasions pursuant to the contract at issue. However, Honduras refused to release the arms and ship them to SAMCO in Miami as it had done in the past and as was required to consummate the sale. Honduras's breach of contract had a direct and immediate consequence in the United States as the sale could not be completed.

b. Similarly, in early 2009, SAMCO had the opportunity to sell more ammunition as well as weapons held by Honduras in bailment to Century International Arms, based in Delray Beach, Florida, for delivery in Florida. However, as the direct result of Honduras's breach of contract in failing to deliver the goods to SAMCO in Miami, as it had done in the past, the sale was lost.

49.) SAMCO has retained undersigned counsel and is obligated to counsel for fees and costs which Defendants are legally responsible for.

## COUNT II
## DECLARATORY JUDGMENT

50.) SAMCO incorporates by reference paragraphs 1 through 40 as though set forth at length herein.

51.) SAMCO – as the rightful and lawful owner of the subject commercial goods – has not received possession of all of the goods at issue in Honduras, and all administrative processes have been exhausted in Honduras for recovery of the same.

52.) A bona fide, actual, present practical need for a declaration exists as, despite any Order of the Honduran courts, Defendants have not properly preserved or returned the remaining inventory of armaments to SAMCO as the contract at issue requires.

53.) The Republic of Honduras illegally possesses the commercial goods at issue despite Order of the Honduran courts that SAMCO is the rightful and lawful owner of the subject commercial goods. That being the case, the Republic of Honduras, Procuraduria General de la Republica and Rosa America Miranda de Galo, Procurador General of the Republic of Honduras, represent all actual, present, adverse and

antagonistic interests in the subject matter of this litigation, and are before this Court by proper process.

54.) A declaratory decree is necessary to SAMCO's ability to enforce the confirmed judgment of the Honduran courts.

### REQUEST FOR JURY TRIAL

Plaintiff here requests a jury trial of all matters so triable as a matter of right.

**WHEREFORE,** Plaintiff, SAMCO GLOBAL ARMS, INC., respectfully requests this Court enter a declaratory decree recognizing and enforcing the confirmed Honduran judgment, and demands judgment against Defendants for compensatory damages, costs of this action, attorney's fees, prejudgment interest, and all other damages this Court deems just and equitable.

Respectfully submitted,

Thomas E. Scott (FBN: 149100)
Steven R. Safra (FBN: 057028)
**COLE, SCOTT & KISSANE, P.A.**
Dadeland Centre II, 14th Floor
9150 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 350-5300
Facsimile: (305) 373-2274
Attorneys for SAMCO


By:_____
      Thomas E. Scott

And

17

CASE NO.: 10-20196-CIV-LENARD/SIMONTON

DANIELS, KASHTAN, DOWNS.
ROBERTSON & MCGIRNEY
Co-Counsel for Plaintiff
*Samco Global Arms, Inc.*
3300 Ponce De Leon Boulevard
Coral Gables, FL 33134
Telephone: (305) 448-7988
Facsimile: (305) 448-7978

BY:  s/ Alvin D. Lodish
     Alvin D. Lodish, Esq.
     Fla. Bar No.: 0622273
     Alodish@dkdr.com
     Madelyn Simon Lozano, Esq.
     Fla. Bar No.: 678135
     Mlozano@dkdr.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Noticed of Electronic Filing.

/s/ Alvin D. Lodish

18

CASE NO.: 10-20196-CIV-LENARD/SIMONTON

**SERVICE LIST**

*Via CM/ECF:*
*Owen S. Freed*
*Email: ofreed@stearnsweaver.com*
*Bradford V. Swing*
*bswing@stearnsweaver.com*
*Alan H. Fein*
*afein@stearnsweaver.com*
*Carlos J. Canino*
*ccanino@stearnsweaver.com*
*Geri Fischman*
*gfischman@stearnsweaver.com*
**Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.**
*Museum Tower, Suite 2200*
*150 W. Flagler Street*
*Miami, FL 33130*
*Attorneys for Defendants*